THOMAS E. MONTGOMERY, County Counsel
County of San Diego
By RICKY R. SANCHEZ, Senior Deputy (SBN 107559)
   MELISSA M. HOLMES, Senior Deputy (SBN 220961)
   FERNANDO KISH, Senior Deputy (SBN 236961)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531- 4874
E-mail: ricky.sanchez@sdcounty.ca.gov

Attorneys for Defendant County of San Diego

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASSIDY NeSMITH, individually and as Guardian ad Litem on behalf of SKYLER KRISTOPHER SCOTT NeSMITH, and as Successor in Interest to THE ESTATE OF KRISTOPHER SCOTT NeSMITH,<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF SAN DIEGO, SAN DIEGO COUNTY SHERIFF'S DEPARTMENT; WILLIAM D. GORE, SAN DIEGO COUNTY SHERIFF; VISTA DETENTION FACILITY; and DOES 1 – 100 inclusive,<br><br>    Defendants. | No. Case No. 15-cv-0629-JLS (AGS)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL THIRD-PARTY WITNESS KELLY DAVIS TO APPEAR FOR DEPOSITION AND PRODUCE DOCUMENTS IN COMPLIANCE WITH SUBPOENA<br><br>Date: February 2, 2018<br>Time: 4:00 p.m.<br>Courtroom: Suite 5160<br>Hon. Andrew G. Schopler, U.S. Magistrate Judge<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY COURT |

## FACTUAL AND PROCEDURAL HISTORY

On February 9, 2016, Chassidy NeSmith, individually and as *Guardian ad Litem* on behalf of Skyler Kristopher Scott NeSmith (Plaintiffs) filed their Second Amended Complaint against Defendant, County of San Diego (Defendant or County), alleging claims for municipal civil rights (*Canton*) and wrongful death in connection with Decedent, Kristopher NeSmith's March 1, 2014 suicide in a County jail.  [Doc. No 19.]

///

No.  15-cv-0629-JLS (AGS )

At the time of his suicide, Decedent was facing a potential life sentence for domestic violence, mayhem, resisting arrest, and attempted murder. [Doc. No. 19 at 12:13-14, 12: 16-17.] Plaintiffs' Second Amended Complaint alleges that the County should have been on notice of "inadequate suicide prevention policies and training programs" because there was a "pattern of similar constitutional violations." [Doc. No. 19 at 22:22-24.] Plaintiffs allege that Decedent's suicide was part of a larger "pattern," and in doing so incorporate and rely on the "research" of Kelly Davis (Davis) and her articles for a local free paper throughout the Second Amended Complaint. [*See generally* Doc. No 19 and at 23:7-27; 24:1-28; 25:1-2; 9-28; 26:1-4; 28:18-25; 29: 2-24; 30: 3-8; 12-27; 31: 9-13; 34: 22-28; 35: 1-28; 36:1-22; 37:1-23.] Plaintiffs describe Davis as a "[l]ocal reporter who has dedicated her career to reporting and investigating deaths in the San Diego County jail... ." [Doc. No. 19 at 22:25-26.] Davis' articles are also attached as Exhibits 3, 4, 5, 6, and 7 to the Second Amended Complaint. [Doc. No. 19 -1 at pp. 10, 18, 20, 23, & 27.] When ruling on the Motion to Dismiss the Second Amended Complaint, the Court found that Davis' articles along with other materials "could plausibly haven given the County notice" to support a municipal civil rights claims. [Doc. No. 25 Order on Motion to Compel 12:3 – 17.] Thus, it is necessary for the County to conduct discovery regarding the basis and accuracy of Davis' research and publications relied on in the Second Amended Complaint.

Pursuant to Federal Rule of Civil Procedure 45, on November 15, 2017, Defendant served Davis with both a subpoena for testimony at deposition and a subpoena for testimony at deposition and demand for documents. [Exs. A & B attached to the Notice of Lodgment (NOL) filed herewith.]   The deposition was noticed for December 11, 2017.  [Ex. A to NOL.]

On December 4, 2017, counsel for Davis called defense counsel to discuss the scope of the subpoena.  The same day, counsel for Davis served objections to the subpoenas along with correspondence setting forth, in more detail, Davis' objections to the subpoenas based on California state law and the First Amendment.  [Exs. C & D to

NOL.]  Davis also objected alleging undue burden based on Davis' health. [*Id.*]  In the letter accompanying the objection, counsel for Davis stated that Davis would not honor the subpoena absent a motion to compel.  [Ex. C to NOL at p. 7.]

On December 6, 2017, defense counsel wrote Davis' counsel requesting to meet and confer pursuant to Local Rule 26.1(a).  [Ex. E to NOL.]  On December 12, 2017, counsel for Davis and defense counsel met and conferred in an attempt to avoid Court intervention.  They discussed the possibility of a stipulation that counsel for Davis would present to Plaintiffs' counsel to potentially resolve the issue. [Ex. F & G to NOL.] Defendant proposed the following stipulation:

> 1. The reporter Kelly Davis will be precluded from providing testimony (written or oral) in the above captioned matter;
>
> 2. Any publications (including but not limited to newspaper and online articles, op/eds, tweets, blog posts, interviews or statements) by Kelly Davis or co-written by Kelly Davis, or other publications that reference or relate to Kelly Davis' publications regarding suicide, mortality, or death rates in the County of San Diego jails shall not be admitted as evidence or referred to for any purpose in this action; and
>
> 3. Any research, notes, opinions, charts, or conclusions Kelly Davis made or has regarding suicide, mortality or death rates in the County of San Diego jails (or other publications or reports referencing Kelly Davis' research, notes, opinions, charts, or conclusions) shall not be admitted as evidence or referred to for any purpose in this action. [Ex. F.]

On December 19, 2017, Davis' counsel responded stating Plaintiffs were unwilling to sign the stipulation and proposed order unless the following language was added to Paragraph 2 of the proposed stipulation and order – "except for the limited purpose of proving that the allegations made in the articles were in the public realm at the time of the articles' publication and not for the purpose of proving the truth of the allegations." [Exs. H & I to NOL.]

The amendment to the stipulation proposed by Plaintiffs is untenable because it would require the County to defend Davis' opinions and conclusions without examining

her. Davis' deposition is necessary because the County requires an opportunity to inquire as to the basis and rationale of her conclusions if Plaintiffs are going to be referencing her conclusions to support their claims. The proposed amendment defeats the purpose of the stipulation by precluding examination of Davis but allowing for references to her articles and opinions. Accordingly, the County respectfully requests that the Court issue an order compelling Davis to testify at deposition and produce the requested documents. *See Forsythe v. Brown*, 281 F.R.D. 577, 587 (D. Nev. 2012), report and recommendation adopted, No. 3:10-CV-00716-RCJ, 2012 WL 1833393 (D. Nev. May 18, 2012).

## ANALYSIS AND ARGUMENT

### I.

### FEDERAL LAW AFFORDS PARTIES BROAD DISCOVERY RIGHTS

The Supreme Court has held that "deposition-discovery rules are to be accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S 495, 507 (1947). All relevant evidence is subject to discovery. *See USCS Fed. Rules Civ. Proc. R.* 26(b)(1). This broad right of discovery is based on the general principle that litigants have a right to "'every man's evidence,' …and that wide access to relevant facts serves the integrity and fairness of the judicial process by promoting the search for the truth." *Shoen v. Shoen*, 5 F.3d 1289, 1292 (1993) (citation omitted).

### II.

### FEDERAL PRIVILEGE LAW, NOT STATE LAW APPLIES

Davis contends that California law bars the deposition. Such is not the case. Plaintiffs filed suit in federal court asserting three § 1983, federal question, claims against the County.

California and federal law differ in how they apply evidentiary privileges to journalists. California law recognizes an absolute privilege for journalists under the *California Constitution, Article 1, §2,* Speech and Press, otherwise known as the

///

4

No. 15-cv-0629-JLS (AGS)

Journalist Shield Law. *See Delaney v. Superior Court*, 50 Cal. 3d 785, 796-797, 798 (1990); *see also Cal. Civ. Proc. Code* § 1986.1; *Cal. Evid.Code* § 1070.

In federal question matters, there is only a *qualified* privilege for journalists. Federal privilege law is governed by *Federal Rule of Evidence* 501. *FRE* 501 recognizes federal common law as governing testimonial privileges, unless a federal statute, rules promulgated by the Supreme Court, or the United States Constitution provides otherwise. *See also Crowe v. Cty. of San Diego*, 242 F. Supp. 2d 740, 744-750 (S.D. Cal. 2003) (explaining "a garden-variety § 1983 claim is a federal claim governed by federal law" and therefore federal privilege law applies).

### III.

### THE QUALIFIED PRIVILEGE FOR JOURNALISTS DOES NOT PRECLUDE DAVIS' DEPOSITION

In *Branzburg v. Hayes*, 408 U.S. 665 the Supreme Court "dealt precisely with the First Amendment free press provisions." *Farr v. Pitchess*, 522 F.2d 464, 467 (9th Cir. 1975). The court combined three separate criminal trials in which reporters refused to disclose their sources to a grand jury and were subsequently charged with contempt. *See id.* The Court recognized there are some first amendment protections of news sources. *See id.* However, "the language of the case likewise indicate[d] that the privilege is a limited or conditional one." *Id*. The Ninth Circuit noted that *Branzburg* "appears to teach broadly enough to be applied to other civil or criminal judicial proceedings as well." *Id*. After *Branzburg*, circuit courts, including the Ninth Circuit, began recognizing a qualified privilege for journalist in both criminal and civil cases. *See e.g. Shoen v. Shoen (Shoen I)*, 5 F.3d 1289 (9th Cir. 1993); *Mark v. Shoen (Shoen II)*, 48 F.3d 412 (9th Cir. 1995). Ninth Circuit case law on the journalists' privilege stems from two related cases *Shoen I* and *Shoen II*.

In *Shoen I*, the Ninth Circuit acknowledged the existence of a qualified privilege for journalists. *Shoen I,* 5 F.3d at 1292. "When facts acquired by a journalist in the course of gathering the news become the target of discovery, a qualified privilege against

compelled disclosure comes into play." *Id.* The court further explained that "once the privilege is properly invoked, the burden shifts to the requesting party to demonstrate a sufficiently compelling need for the journalist's materials to overcome the privilege." *Id.* at 1296. "At a minimum, this requires a showing that the information sought is not obtainable from another source." *Id.* The court further recognized that the qualified privilege for journalists, applies to both confidential and non-confidential sources. *Id.* at 1295. However, the "absence of confidentiality may be considered in the balance of competing interests as a factor that diminishes the journalist's, and the public's, interest in non-disclosure." *Id.*

In *Shoen II*, the Ninth Circuit affirmed their decision recognizing a qualified privilege for journalists. 48 F.3d at 416. The Court expanded on *Shoen I* by creating a three part test to determine if the asserted privilege applied. The Court determined "that where information sought is not confidential, a civil litigant is entitled to requested discovery notwithstanding a valid assertion of the journalist's privilege by a nonparty only upon a showing that the requested material is: (1) unavailable despite exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly relevant to an important issue in the case…there must be a showing of actual relevance; a showing of potential relevance will not suffice." *Id.* at 416.

The factors set forth in *Shoen II* are not satisfied here. There are no indications that Davis' opinions and articles rely on confidential sources. The information sought by the subpoenas is not cumulative and it is only available from Davis. While the County does have access to raw statistical data, such information is not reflective of her interpretations and analysis of that data. It is also directly relevant to an important issue – Plaintiffs' Second Amended Complaint heavily relies on and cites to information set forth in Davis' series of articles for the San Diego City Beat (an "alternative" free publication) titled "60 Dead Inmates." Plaintiffs' municipal civil rights claims against the County hinge on Davis' articles and research. Her deposition is necessary to defend the

///

municipal civil rights claims and is likely to provide evidence relevant to the County's defense.

Davis' analysis, motivations, and basis for her opinions are appropriate subjects for discovery in light of Plaintiffs' claims.  Davis' decision to use specific factors and statistics when setting forth her opinions is not incorporated in those articles. Despite the County's access to raw data, it requires information as to the judgements Davis employed when using data sets and formulas to create her statistics.  For example, Davis has compared jail deaths in Orange and Los Angeles Counties to the County of San Diego. [Doc. No. 19 at 26:28 and Doc No, 19-1 at 28.]  Unlike the County of San Diego, Orange and Los Angeles Counties employ both city and county jail facilities that could affect comparisons.  Davis also provides quotes from multiple purported specialists on jail deaths that she spoke with but, due to the truncated nature of her articles, the totality of the opinions she relied on (and more importantly possibly chose to omit) are not set forth in her articles. [Doc. No. 19-1 at pp. 11 – 17 & 28 – 30.]

In order to successfully defend against Davis' conclusions and opinions that San Diego had a higher number of suicides than similarly populated counties and that her articles put the County on notice of a pattern of alleged constitutional violations, it is essential that the County understand what variables Davis did or did not take into account while writing her articles.

The information regarding Davis' opinions is highly relevant to Plaintiff's municipal civil rights claim against the County. In order to prevail on their *Canton* claims, Plaintiffs need to prove that (1) they were deprived of their constitutional rights by the City acting under color of state law; (2) that the City has customs or policies which amount to 'deliberate indifference' to a plaintiffs constitutional rights; and (3) that these policies were the 'moving force behind the constitutional violations.' " *See Estate of Amos v. City of Page,* 257 F.3d 1086, 1094 (9th Cir. 2001); *see also* Doc. No 25 (Order on Motion to Dismiss).

///

## IV.
## DAVIS MAY HAVE IMPLIEDLY WAIVED HER PRIVILEGE BY DISCLOSING NON-PUBLISHED INFORMATION TO PLAINTIFFS' COUNSEL

The journalist's privilege like other testimonial privileges may be impliedly waived. *See Ayala v. Ayers,* 668 F. Supp. 2d 1248, 1250 (S.D. Cal. 2009); *See also Sims v. Blot*, 534 F.3d 117, 132 (2d Cir. 2008).

In *Ayala,* the court determined that "[i]n the interests of fairness, a journalist/author should not be permitted to disclose information to advance the interests of one litigant and then invoke the journalist's privilege to prevent discovery of this same information by another litigant." 668 F. Supp. 2d at 1250. *Ayala* involved an author who produced a manuscript to petitioner's counsel, but later refused to produce it to respondent's counsel. *See id.* at 1249-1250. In analyzing whether the author waived his privilege, the court cited to *Sims v. Blot,* a Second Circuit case which determined that "[i]n dealing with testimonial privileges… , we have held that a waiver may be implied in circumstances where it is called for in the interests of fairness." 534 F.3d at 132. The court further explained that fairness considerations arise when litigants attempt to use a testimonial privilege as both a sword and a shield. *See id.* In other words, a journalist cannot use information to assist one litigant, but then claim a testimonial privilege in order to withhold information from another litigant.

Here, Davis is refusing to submit to a deposition subpoena and produce documents relating to her communications with Plaintiffs' counsel or any information related to her series of articles, "60 Dead Inmates." However, Plaintiff's Second Amended Complaint implies that Ms. Davis disclosed research to Plaintiffs' counsel. These potential disclosures are encompassed in the Complaint's independent references to "Ms. Davis' research." Paragraphs 74, 97 and 123 state, "[a]ccording to Kelly Davis' research – based on public records request for official death investigation reports and coroner's reports – there have been 18 suicides in San Diego County jails since 2013." [Doc. No. 19 at 23:7-9, 29: 2-4, 35:1-3.] Paragraphs, 85, 107, 134 state "[a]ccording to Kelly Davis' research, there were four suicides in 2009, one in 2010, five in 2011, two in 2012, five in

2013, six in 2014, and six in 2015. So far this year (2016) there has been one suicide. In short, there have been 18 suicides since 2013." [Doc. No. 19 at 25:28, 26:1-3, 31:9-12, 37:19-22.] Lastly, Footnotes 1, 2, 3, also set forth, "[i]n comparison, according to Kelly Davis' research, Los Angeles County was able to get its suicides down from ten in 2013 to five in 2014 and one in 2015. Orange County has had no suicides for the last three years." [Doc. No. 19 at 26: Fn1, 31:Fn2. 37:Fn3.] These statistics are not in quotes and do not directly mirror information in the attached exhibits. Parts of the cited statistics are present in a few of Davis articles, but the direct quotes do not appear to stem from any single article. If this information does directly come from a publicly available article it was not attached as an exhibit to Second Amended Complaint.

## VII.

### USE OF DAVIS' OPINIONS WITHOUT DISCOVERY IS PROBLEMATIC

Plaintiffs contend that:

> "Davis …has dedicated her career to reporting and investigating deaths in the San Diego County Jails. She began her series of investigations into San Diego jail suicides in 2007. Since this time she has published over a dozen articles highlighting the outrageous pattern of deaths and suicides in San Diego County Jails." [Doc. No. 19 at 22:25-28, 23:1-6.]

Allowing Plaintiffs to rely on Davis' research, conclusions and opinions without permitting her deposition to be taken is akin to permitting a party to present expert opinion without expert discovery. *Federal Rule Evidence* 501, "does not recognize any general privilege for experts." *See Kaufman v. Edelstein*, 539 F.2d 811, 820 (2d Cir. 1976) ("[T]here is no constitutional or statutory privilege against the compulsion of expert testimony…"); *see also Wright v. Jeep Corp., 547 F. Supp. 871, 875 (E.D. Mich. 1982)* ("Privileges are the exception to the general duty of every citizen to provide evidence when necessary to further the system of justice."); *see also Wilkinson v. FBI*, 111 F.R.D. 432, 441 (C.D. Cal. 1986) ( "[A]lthough several opinions appear to be sympathetic to such a privilege, there is no case which explicitly holds that such a privilege exists.")

**CONCLUSION**

The County acknowledges Davis' health issues.  The County will endeavor to ensure that the deposition will not be an undue burden on her health.

Accordingly, for the reasons set forth above, the County respectfully requests the court grant the Motion to Compel Deposition and Production of Documents.

DATED: January 3, 2018  THOMAS E. MONTGOMERY, County Counsel

By: s/MELISSA M. HOLMES
Attorneys for Defendant County of San Diego
E-mail: melissa.holmes@sdcounty.ca.gov