1
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
2
  Including Professional Corporations
JAMES M. CHADWICK, Cal. Bar. No. 157114
3
MATTHEW G. HALGREN, Cal Bar No. 305918
501 West Broadway, 19th Floor
4
San Diego, California 92101-3598
Telephone:   619.338.6500
5
Facsimile:   619.234.3815
Email:         jchadwick@sheppardmullin.com
6
               mhalgren@sheppardmullin.com

7

Attorneys for Non-Party Journalist
8
KELLY LYNN DAVIS

9
IN THE UNITED STATES DISTRICT COURT
10
FOR THE SOUTHERN DISTRICT OF CALIFORNIA
11

12
CHASSIDY NESMITH, ET AL.,

13
                     Plaintiffs,

14
          v.

15
COUNTY OF SAN DIEGO, ET AL.,

16
                     Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 15-cv-00629-JLS-AGS

**OPPOSITION TO DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO COMPEL NON-PARTY JOURNALIST KELLY DAVIS TO APPEAR AT DEPOSITION AND PRODUCE DOCUMENTS**

Date:         February 2, 2018
Time:         4:00 p.m.
Courtroom:  Suite 5160
Hon. Andrew G. Schopler, U.S. Magistrate Judge

# <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION ...................................................................................................... 1

BACKGROUND ....................................................................................................... 1

DISCUSSION ........................................................................................................... 2

I.   DAVIS IS PROTECTED BY THE REPORTER'S PRIVILEGE UNDER
     THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION ........ 2

     A.   The First Amendment Protects Reporters from Compelled Disclosure .......... 2

     B.   Davis Has Standing to Invoke the Journalist's Privilege ............................... 3

     C.   The County Has Failed to Meet Its Burden of Demonstrating a
          Compelling Need to Overcome Davis's Privilege .......................................... 3

          1.   The County has not demonstrated that it has exhausted all
               reasonable alternative sources ............................................................... 4

          2.   The County has not demonstrated that the information it seeks
               in not cumulative ................................................................................... 6

          3.   The County has not demonstrated that the information it seeks
               is clearly relevant to an important issue in the litigation .................... 7

               a.   Evidence of suicide rates is not offered or admissible for
                    the truth of the matter asserted, so Davis's testimony is
                    not needed ...................................................................... 7

               b.   Evidence of the articles as being in the public realm, and
                    hence constituting evidence of notice, cannot be refuted
                    by the testimony the County seeks ............................................. 8

II.  DAVIS IS ALSO PROTECTED UNDER A FEDERAL COMMON LAW
     REPORTER'S PRIVILEGE BASED ON CALIFORNIA LAW AND
     FEDERAL RULE OF EVIDENCE 501 .................................................................. 11

III. DAVIS HAS NOT IMPLIEDLY WAIVED HER PRIVILEGE ............................. 14

IV.  THE COUNTY'S ARGUMENT REGARDING TESTIFYING EXPERT
     DISCOVERY IS MERITLESS ............................................................................ 16

V.   IT WOULD BE UNDULY BURDENSOME FOR DAVIS TO COMPLY
     WITH THE SUBPOENA ..................................................................................... 16

VI.  DAVIS IS ENTITLED TO COST OF MOTION SANCTIONS .............................. 17

CONCLUSION ......................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*AFMS LLC v. United Parcel Serv. Co.*
  105 F. Supp. 3d 1061 (C.D. Cal. 2015) ................................................................. 7, 16

*Branzburg v. Hayes*
  408 U.S. 665 (1972) ........................................................................................ 11, 12

*Bursey v. United States*
  466 F.2d 1059 (9th Cir. 1972) ................................................................................ 11

*Delaney v. Superior Court*
  50 Cal. 3d 785 (1990) ............................................................................................ 14

*Green v. Baca*
  226 F.R.D. 624 (C.D. Cal. 2005) ............................................................................. 7

*Jaffee v. Redmond*
  518 U.S. 1 (1996) ......................................................................................... 11, 12, 13

*Jimenez v. City of Chicago*
  733 F. Supp. 2d 1268 (W.D. Wash. 2010) ...................................................... 5, 6, 8, 17

*Lewis v. United States*
  517 F.2d 236 (9th Cir. 1975) ................................................................................. 13

*Michael v. Estate of Kovarbasich*
  No. 15-00275-MWF, 2015 WL 8750643 (C.D. Cal. Dec. 11, 2015) ........................... 15

*Mitchell v. Superior Court*
  37 Cal. 3d 268 (1984) ............................................................................................ 14

*New York Times Co. v. Superior Court*
  51 Cal. 3d 453 (1990) ............................................................................................ 14

*Riley v. City of Chester*
  612 F.2d 708 (3d Cir. 1979) ................................................................................... 13

*Shoen v. Shoen*
  48 F.3d 412 (9th Cir. 1995) ....................................................................... 1, 3, 7, 8, 10

*Shoen v. Shoen*
  5 F.3d 1289 (9th Cir. 1993) ....................................................................... 2, 3, 4, 12

*In re Stratosphere Corp. Sec. Litig.*
    183 F.R.D. 684 (D. Nev. 1999) ............................................................... 4

*Tennenbaum v. Deloitte & Touche*
    77 F.3d 337 (9th Cir. 1996) .................................................................... 13

*Trammel v. United States*
    445 U.S. 40 (1980) .................................................................................. 11

*Von Saher v. Norton Simon Museum of Art at Pasadena*
    592 F.3d 954 (9th Cir. 2010) .................................................................... 9

*Wright v. Fred Hutchinson Cancer Research Ctr.*
    206 F.R.D. 679 (W.D. Wash. 2002) ............................................. 5, 6, 7, 17

<u>Other Authorities</u>

Black's Law Dictionary ............................................................................... 6

Cal. Const. Article I, § 2(b) ....................................................................... 14

Fed. R. Civ. Proc.
    37(a)(5)(B) ............................................................................................. 17
    45(c) ...................................................................................................... 17

Fed. R. Evid.
    501 ................................................................................... 1, 11, 13, 14

Gregg Leslie, *What's up with Wyoming and the reporter's privilege?* ............................. 13

NEWS MEDIA & THE LAW, Reporters Committee for Freedom of the Press,
    Fall 2008, <u>https://www.rcfp.org/browse-media-law-resources/news-</u>
    <u>media-law/news-media-and-law-fall-2008/whats-wyoming-and-reporters-</u>
    <u>p</u> ........................................................................................................... 13

NEWS MEDIA & THE LAW, Reporters Committee for Freedom of the Press,
    Summer 2011, <u>https://www.rcfp.org/browse-media-law-resources/news-</u>
    <u>media-law/news-media-law-summer-2011/number-states-shield-law-</u>
    <u>climbs;</u> .................................................................................................. 13

United States Constitution First Amendment ......................................... 2, 3

SMRH:485227108.2

1

### INTRODUCTION

2      Recognizing that "routine court-compelled disclosure of research materials poses a

3  serious threat to the vitality of the newsgathering process," the Ninth Circuit has

4  established a rigorous privilege that journalists may invoke to avoid testifying or producing

5  documents. *Shoen v. Shoen* ("*Shoen II*"), 48 F.3d 412, 415 (9th Cir. 1995).  Parties who

6  wish to compel disclosure from journalists must meet a heavy burden of demonstrating

7  that they have an "exceptional" need for the information sought.  *Id.*  In this case, the

8  County of San Diego ("County") seeks to compel disclosure from non-party journalist

9  Kelly Davis ("Davis").  The County, however, has not met and cannot meet its burden.

10  Additionally, non-party journalists in California, including Davis, are entitled to an

11  absolute privilege against compelled disclosure in civil cases under Federal Rule of

12  Evidence 501.  Furthermore, there is no basis for the County's suggestion that Davis "may

13  have impliedly waived her privilege."  Therefore, the Court should deny the County's

14  motion to compel.

15

### BACKGROUND

16      On November 15, 2017, the County served Davis with subpoenas for testimony at a

17  deposition and a demand for documents.  (ECF 57-2 at 4–16.)  On December 4, 2017,

18  counsel for Davis sent to the County objections to the subpoenas.  (ECF 57-2 at 18–21.)

19  Counsel for Davis also sent to the County as a letter explaining why Davis was exempt

20  from compelled disclosure under the journalist's privilege and further explaining that the

21  subpoenas imposed an undue burden on Davis in light of her health.  (ECF 57-2 at 23–29.)

22      On December 12, 2017, counsel for Davis and the County met and conferred.  (*See*

23  ECF 57-2 at 38.)  Counsel for the County offered to prepare a stipulation and indicated

24  that, if Plaintiff's counsel agreed to the stipulation, then the County would withdraw its

25  subpoena.  (*Id.*)  The County's proposed stipulation provided that Davis would be

26  precluded from testifying and that her articles and research could not be admitted into

27  evidence for any purpose.  (ECF 57-2 at 34–36.)

28

On December 19, 2017, counsel for Davis sent a letter to counsel for the County explaining that Plaintiff's counsel was willing to agree to the County's stipulation provided that the stipulation included a proviso that Davis's articles could be used "for the limited purpose of proving that the allegations made in the articles were in the public realm at the time of the articles' publication and not for the purpose of proving the truth of the allegations." (ECF 57-2 at 40, 44.) Counsel for the County did not respond to counsel for Davis's December 19, 2017 communication or make any effort to further negotiate a resolution, instead electing to file the instant motion to compel on January 3, 2018.

## DISCUSSION

## I.     DAVIS IS PROTECTED BY THE REPORTER'S PRIVILEGE UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

### A.     The First Amendment Protects Reporters from Compelled Disclosure

The Ninth Circuit has recognized that protecting journalists from compelled disclosure is critical to the functioning of a free press, regardless of whether or not a subpoena seeks confidential information. *Shoen v. Shoen*, 5 F.3d 1289, 1295 (9th Cir. 1993) ("*Shoen I*").

> To the extent that compelled disclosure becomes commonplace, it seems likely indeed that internal policies of destruction of materials may be devised and choices as to subject matter made, which could be keyed to avoiding disclosure requests or compliance therewith rather than to the basic function of providing news and comment. In addition, frequency of subpoenas would not only preempt the otherwise productive time of journalists and other employees but measurably increase expenditures for legal fees.

*Id.* at 1295 (quoting *United States v. LaRouche Campaign*, 841 F.2d 1176, 1182 (1st Cir. 1988)). Compelled disclosure of non-confidential information also poses "the threat of administrative and judicial intrusion into the newsgathering and editorial process" and "the disadvantage of a journalist appearing to be an investigative arm of the judicial system or a research tool of government or of a private party." *Shoen I*, 5 F.3d at 1294–95 (quoting *LaRouche Campaign*, 841 F.2d at 1182).

Accordingly, the Ninth Circuit recognizes that journalists have a "qualified privilege against compelled disclosure." *Shoen* I, 5 F.3d at 1292. "Once the privilege is

1   properly invoked, the burden shifts to the requesting party to demonstrate a sufficiently

2   compelling need for the journalist's materials to overcome the privilege." *Id.* at 1296.

3   **B.      Davis Has Standing to Invoke the Journalist's Privilege**

4          "[W]hen facts acquired by a journalist in the course of gathering the news become

5   the target of discovery, a qualified privilege against compelled disclosure comes into

6   play." *Shoen I*, 5 F.3d at 1292.  Furthermore, "[t]he journalist's privilege is designed to

7   protect investigative reporting, regardless of the medium used to report the news to the

8   public." *Id.* at 1293.  The information Davis gathered for the purpose of reporting on jail

9   suicides in the weekly news publication *San Diego CityBeat* falls within the core of

10  material protected under the privilege.  The County does not dispute, nor could it dispute,

11  that Davis has standing to invoke the privilege.  The burden therefore falls on the County

12  "to demonstrate a sufficiently compelling need" to overcome Davis's privilege.  *Id.* at

13  1296.

14  **C.      The County Has Failed to Meet Its Burden of Demonstrating a Compelling**

15          **Need to Overcome Davis's Privilege**

16          "[T]he process of deciding whether the privilege is overcome requires that 'the

17  claimed First Amendment privilege and the opposing need for disclosure be judicially

18  weighed in light of the surrounding facts, and a balance struck to determine where lies the

19  paramount interest.' " *Shoen v. Shoen*, 48 F.3d 412, 415 (9th Cir. 1995) (quoting *Shoen I*,

20  5 F.3d at 1292–93) ("*Shoen II*").  A party may only compel disclosure from a non-party

21  journalist if it can demonstrate that the information it seeks is "(1) unavailable despite

22  exhaustion of all reasonable alternative sources; (2) noncumulative; and (3) clearly

23  relevant to an important issue in the case." *Shoen II,* at 415.

24          Under this standard, "compelled disclosure is the exception, not the rule" *Id.* at

25  416.  "[I]n the ordinary case the civil litigant's interest in disclosure should yield to the

26  journalist's privilege.  Indeed, if the privilege does not prevail in all but the most

27  exceptional cases, its value will be substantially diminished." *Id.* (quoting *Zerilli v. Smith*,

28  656 F.2d 705, 712 (D.C. Cir. 1981)).  The County's threadbare motion fails to demonstrate

-3-

that this is an exceptional case.  The County has no compelling need to obtain disclosure from Davis.

### 1.    The County has not demonstrated that it has exhausted all reasonable alternative sources

The County subpoenaed two categories of information from Davis: (1) information regarding Davis's assessment in her news articles of how the San Diego County jail system's mortality and suicide rates compared with rates in other jail systems, and (2) copies of any communication she may have had with individuals who work for the Morris Law Firm regarding jail mortality and suicide rates and the suicides of specific inmates discussed in her reporting.  (ECF 57-2 at 13–14 (NOL Ex. A).)  The County has not demonstrated that it has exhausted all reasonable alternative sources of this information.

As to the first category, the County claims that it needs to explore "Davis' analysis, motivations, and basis for her opinions."  (ECF 57-1 at 7.)  In attempting to justify this claims, the County asserts that it needs data about mortality and suicide rates in San Diego County jails compared to other counties.  The County itself is a "patently available other source" for this data.  *Shoen I* at 1297.  If the County wishes to compare its rates with those in other counties, then those counties are readily available alternative sources.  Those counties or the cities they include would also be able to provide the County with the breakdown of data it seeks between county and city jail facilities.  Thus, this assertion does not provide a basis for the County's motion.  *See, e.g., In re Stratosphere Corp. Sec. Litig.*, 183 F.R.D. 684, 687 (D. Nev. 1999) (denying motion to compel disclosure of how journalist made calculations when there was "no clear or specific showing that the information sought is not obtainable from other sources, or that Plaintiffs have exhausted other potential sources").

The County also claims that "Davis' decision to use specific factors and statistics when setting forth her opinions is not incorporated in [the] articles" attached to the SAC, and that it therefore needs to compel her to explain how she calculated the death rates.

(ECF 57-1 at 7.)  However, this assertion is simply false.  The first article attached to the SAC specifically states that it used the model provided by the Bureau of Justice Statistics (BJS) at the U.S. Department of Justice.  (ECF 19-1 at 13.)  The article also explained why Davis selected the BJS model over the model preferred by the County.  (ECF 19-1 at 14.)  Morever, the County does not need data from Davis to challenge her conclusions.  As explained, it has other sources for the information on which any such challenge would be based.

The County also says that it wants to ask Davis about quotations included in her articles.  (ECF 57-1 at 7.)  It does not even bother to identify which quotations it purportedly needs to assess.  In any event, those quotations are all attributed.  If the County can justify why it might need the information, it can find out from the sources what they told her.  *See, e.g.*, *Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1272 (W.D. Wash. 2010) ("Defendants have not deposed Plaintiff or any other party regarding the documents and communications between [the journalist] and Plaintiff. . . .  By failing to depose Plaintiff, Defendants failed to exhaust all reasonable alternative sources for the privileged information they seek.").

With regard to information regarding any communication Davis may have had with individuals who work for the Morris Law Firm, there is also an obvious alternate source: the individuals who work for the Morris Law Firm.  The County does not discuss this category of information in its motion, and it therefore does not even begin to meet its burden of demonstrating that it has exhausted all other sources.  *See, e.g., Wright v. Fred Hutchinson Cancer Research Ctr.*, 206 F.R.D. 679, 682 (W.D. Wash. 2002) ("Defendants seek copies of correspondence between the *Seattle Times* and the plaintiffs in this case.  They have not, however, sought to depose plaintiffs regarding these communications and have therefore not exhausted all reasonable alternative sources.")

**2.      The County has not demonstrated that the information it seeks in not cumulative**

Evidence is "cumulative" if it "supports a fact established by the existing evidence." Black's Law Dictionary, "Cumulative Evidence," (10th ed. 2014).  In the reporter's privilege context, information is also cumulative if a party already has information that would accomplish the same purpose or if it could obtain information that would accomplish the same purpose from an unexhausted source. *Jimenez*, 733 F. Supp. 2d at 1273 ("The information [Defendants] seek from [the journalist] is cumulative unless they can demonstrate that alternative means of procurement will provide insufficient results.").

The sum total of the County's efforts to meet its burden of demonstrating that the information it seeks is noncumulative is its conclusory statement that "[t]he information sought by the subpoenas is not cumulative and it is only available from Davis."  (ECF 57-1 at 6.)  The County asserts that it interprets data differently than Davis does, but it provides no declarations or other evidence support this bald assertion.  (*Id.*)  The County provides no argument as to why it couldn't prove whatever it wishes to prove about its jail mortality rates using other evidence and performing its own calculations.  The County's unsupported assertion cannot possibly qualify as meeting its burden of proving that the evidence it seeks from Davis is not cumulative.

As to why communications between Davis and individuals who work for the Morris Law Firm are not cumulative, the County is silent.  The fact that it hasn't exhausted available sources is sufficient to deny its motion.  *Wright*, 206 F.R.D. at 682 (defendants failed to meet their burden of proving evidence sought was not cumulative because "[u]ntil defendants have exhausted the other potential sources for this information, it is impossible to evaluate the need for any additional discovery").  Even if it were not, copies of any communications regarding jail mortality and suicide rates and the suicides of specific inmates would clearly be cumulative of data the County already has (or can readily obtain) on these subjects.

### 3. The County has not demonstrated that the information it seeks is clearly relevant to an important issue in the litigation

"In order to overcome a claim of journalist's privilege, the party seeking discovery bears a far heavier burden in establishing relevance than is applicable in the normal discovery context." *Wright*, 206 F.R.D. at 682.  "[T]here must be a showing of actual relevance; a showing of potential relevance will not suffice." *Shoen II*, 48 F.3d at 416.

In attempting to explain why the information it seeks is relevant, the County states:

> In order to successfully defend against Davis' conclusions and opinions that San Diego had a higher number of suicides than similarly populated counties and that her articles put the County on notice of a pattern of alleged constitutional violations, it is essential that the County understand what variables Davis did or did not take into account while writing her articles.

(ECF 57-1 at 7.)  The County is talking about two distinct subjects: (1) whether San Diego in fact had a higher number of suicides than other counties, and (2) whether the articles put the County on notice of possible constitutional violations.  These subjects present different issues, which are dealt with in turn.

### a. Evidence of suicide rates is not offered or admissible for the truth of the matter asserted, so Davis's testimony is not needed

First, the County claims that it needs to "defend against Davis' conclusions and opinions that San Diego had a higher number of suicides than similarly populated counties."  In other words, the County wishes to dispute the truth of statements made in a newspaper article comparing suicide rates.  However, "[i]t is axiomatic to state that newspaper articles are by their very nature hearsay evidence and are thus inadmissible if offered to prove the truth of the matter asserted." *AFMS LLC v. United Parcel Serv. Co.*, 105 F. Supp. 3d 1061, 1070 (C.D. Cal. 2015), aff'd, 696 F. App'x 293 (9th Cir. 2017); *see also Green v. Baca*, 226 F.R.D. 624, 638 (C.D. Cal. 2005) ("Plaintiff seeks to introduce two *Los Angeles Times* articles regarding over-detentions at the Los Angeles County Jail. . . .  To the extent plaintiff intends to offer the articles for the truth of the matter asserted, they clearly constitute hearsay.").  Thus, under the rules of evidence, Davis's articles are inadmissible to prove the truth of the statements contained in the articles.  Because the

articles are inadmissible to prove the truth of the comparative suicide rates, the County's assertion that it needs Davis's testimony to defend against these assertions in the articles is baseless, and the testimony it seeks from Davis is irrelevant.

The irrelevance of the information the County seeks is underscored by what transpired during the meet and confer process. The County proposed a stipulation that would have excluded Davis's articles and testimony from use in the case for any purpose. (ECF 57-2 at 34–36.) Plaintiff's counsel was willing to agree to the entire stipulation, including the exclusion of Davis's testimony, as long as the stipulation included a proviso that Davis's articles could be used "for the limited purpose of proving that the allegations made in the articles were in the public realm at the time of the articles' publication and not for the purpose of proving the truth of the allegations." (ECF 57-2 at 44.) Accordingly, the County had the opportunity to secure a stipulation confirming what the rules of evidence already provide. There was no circumstance under which the County would have occasion to "defend against Davis' conclusions and opinions."

The County does not explain why it is essential that it be able to refute the accuracy of statements that could never properly be offered for their truth. This is an entirely collateral issue and is not "clearly relevant to an important issue in the case," as is necessary to overcome the reporter's privilege. *Shoen II*, 48 F.3d at 416; *see also id.* at 418. To the extent the County seeks Davis' testimony merely to impeach her articles, its motion must be denied. *Jimenez*, 733 F. Supp. 2d at 1273 (Nowhere in their response do Defendants explain how the documents relate to this civil rights claim. The only explicit relevance claimed (the impeachment of a third party) is merely collateral to Plaintiff's lawsuit.").

**b.** **Evidence of the articles as being in the public realm, and hence constituting evidence of notice, cannot be refuted by the testimony the County seeks**

Second, the County says that it wants to defend against Plaintiff's assertions that Davis's "articles put the County on notice of a pattern of alleged constitutional violations."

1   (ECF 57-1 at 7.)  In its order denying Defendant's motion to dismiss the SAC, the Court

2   stated:

> To attribute deliberate indifference to a government entity, a plaintiff must
> show that "policymakers are on actual or constructive notice that a particular
> omission in their training program causes [the government entity's]
> employees to violate citizens' constitutional rights."  When a plaintiff alleges
> that failing to properly train employees is the moving force behind a
> constitutional violation, it is "ordinarily necessary" to show a "pattern of
> similar constitutional violations by untrained employees" to establish the
> requisite notice.

8   (ECF 25 at 9 (citation omitted) (quoting *Connick v. Thompson*, 563 U.S. 51, 61–63

9   (2011).)  The Court further explained, "The SAC also incorporates a series of news articles

10  detailing instances of suicide in County jails and the County's overall high suicide rate, all

11  of which, taken together with the County's actually confronting these suicides as they

12  occurred, could plausibly have given policymaking County officials notice of a pattern of

13  deliberate indifference to inmates' suicidal ideations by County employees."  (ECF 25 at

14  12.)  Thus, the Court concluded that Davis's articles could be considered for the notice

15  they might have provided to the County the of the allegations contained in the articles.

16        Newspaper articles are often judicially noticed for purposes of proving notice, even

17  when a party could not possibly depose an article's author: "Courts may take judicial

18  notice of publications introduced to 'indicate what was in the public realm at the time, not

19  whether the contents of those articles were in fact true.' "  *Von Saher v. Norton Simon*

20  *Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth*

21  *Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir.2006)).  The proviso that

22  Plaintiff's counsel sought echoed this very language.  (ECF 57-2 at 44 ("except for the

23  limited purpose of proving that the allegations made in the articles were in the public realm

24  at the time of the articles' publication and not for the purpose of proving the truth of the

25  allegations.".)  It is indisputable that Davis's articles were published and that the

26  allegations made in the articles were in the public realm.  That is the only purpose for

27  which the articles would have been used under the stipulation, and no information that the

28

1  County could now obtain from Davis could possibly have any impact on what was in the

2  public realm at the time of the articles' publication.

3  The County contends that, if Plaintiff is going to use Davis's articles as evidence

4  that the County had notice of the allegations in the articles in the past, then the County

5  needs to be able to depose Davis in the present to better understand the evidence

6  underlying the allegations in the articles.  (ECF 57-1 at 7.)  This argument turns the

7  concept of notice on its head.  Plaintiff seeks to use the articles to prove what the County

8  knew in the period leading up to the victim's suicide.  If the County had information in its

9  possession at the time of the suicide that caused it to question or disregard the articles, then

10  it can offer that evidence.  By contrast, obtaining more information after the fact cannot

11  possibly illuminate what the County knew at the time of the suicide.

12  The Court acknowledged this when it declined to consider allegations in the SAC

13  that related to facts arising after the victim's suicide.  It held that these facts were

14  "irrelevant to whether the County was deliberately indifferent because they occurred after

15  Kris' suicide, and could not have therefore provided notice of a suicide problem as it

16  pertains to Kris."  (ECF 25 ar 12.)  Thus, compelled disclosure of Davis's testimony

17  cannot be justified.  *See Shoen II*, 48 F.3d at 417 n.1 (finding information not clearly

18  relevant to an important issue because "the extent of [Plaintiff's] knowledge about the

19  murder at the time of the . . . interviews [with the journalist]—which began a year after the

20  bulk of the alleged libels—sheds little light on the extent of his knowledge or disregard for

21  the truth at the time he made the [alleged libels]").  Any improved understanding of

22  Davis's articles that the County would gain by deposing her *now* is irrelevant to what it

23  had notice of *then*.  It is patently obvious that any information the County might obtain

24  from Davis is not "clearly relevant to an important issue in the case."  *Shoen II*, 48 F.3d at

25  416.

26  The County has failed to meet its burden of demonstrating any of the three elements

27  it must prove in order to overcome Davis's qualified reporter's privilege.  Accordingly, the

28  Court should deny the County's motion to compel.

## II.     DAVIS IS ALSO PROTECTED UNDER A FEDERAL COMMON LAW REPORTER'S PRIVILEGE BASED ON CALIFORNIA LAW AND FEDERAL RULE OF EVIDENCE 501

Just three years after the Supreme Court's decision in *Branzburg v. Hayes*, 408 U.S. 665 (1972), Congress enacted Rule 501 of the Federal Rules of Evidence ("Rule 501"), which provides that privileges in federal cases "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." Fed. R. Evid. 501. In enacting Rule 501, "Congress manifested an affirmative intention not to freeze the law of privilege" but to "leave the door open to change." *Trammel v. United States*, 445 U.S. 40, 47 (1980). Rule 501 thus requires federal courts to "continue the evolutionary development of testimonial privileges." *Id.*

The Supreme Court established the analytic framework for evaluating federal common law privileges under Rule 501 in *Jaffee v. Redmond*, 518 U.S. 1 (1996), which recognized a federal privilege for communications between psychotherapists and their patients despite the absence of any federal legislation. The Court identified the central question as being whether the privilege at issue "'promotes sufficiently important interests to outweigh the need for probative evidence,'" based on "'reason and experience.'" *Id.* at 9-10 (quoting *Trammel*, 445. U.S. at 51). The Court identified three factors to be considered: (1) whether important public and private interests would be served by recognition of the privilege; (2) the evidentiary cost of recognizing a privilege; and (3) whether similar protections were afforded by the states. *Id.* at 10–13. The application of these factors supports the conclusion that there is an absolute reporter's privilege that protects Davis from compelled disclosure in this case.

The reporter's privilege serves important public and private interests. As this Circuit has recognized, protections for the press serve the critical public function of making sure that the public is kept informed. "Freedom of the press was not guaranteed solely to shield persons engaged in newspaper work from unwarranted governmental harassment. The larger purpose was to protect public access to information." *Bursey v.*

1  *United States*, 466 F.2d 1059, 1083–84 (9th Cir. 1972); *see also Branzburg*, 408 U.S. at

2  681 (recognizing that "without some protection for seeking out the news, freedom of the

3  press could be eviscerated").  Thus, as with the privilege at issue in *Jaffee*, this Court

4  should recognize that the reporter's privilege serves "a public good of transcendent

5  importance."  518 U.S. at 11.

6         The second factor identified in *Jaffee* is also satisfied, because the vital interests

7  served by the reporter's privilege outweigh the potential evidentiary costs.  As noted in the

8  preceding section, there is an important public interest in protecting the press from

9  compelled disclosure of unpublished information obtained in the course of newsgathering,

10  even though not obtained in confidence: "'The compelled production of a reporter's

11  resource materials can constitute a significant intrusion into the newsgathering and

12  editorial processes.  Like the compelled disclosure of confidential sources, it may

13  substantially undercut the public policy favoring the free flow of information that is the

14  foundation for the privilege.'"  *Schoen I*, 5 F.3d at 1294, quoting *United States v.*

15  *Cuthbertson*, 630 F.2d 139, 147 (3d Cir.1980).

16         Therefore, as in *Jaffee*, in the absence of a privilege, both communications between

17  reporters and their sources and the ability and willingness of reporters to engage in

18  newsgathering "would surely be chilled," which would result in fewer communications

19  and less discoverable evidence.  518 U.S. at 11–12.  This would undoubtedly harm the free

20  flow of information to the public and the decline in discoverable information would "serve

21  no greater truth-seeking function than if it had been spoken and privileged."  *Id.*

22         The third factor looks to whether there is a consensus among the states in favor of

23  recognizing the privilege.  Here, most strikingly, there is an overwhelming consensus

24  among the states about the reporter's privilege.  Of the 50 states, all but one—Wyoming,

25  which has not weighed in on the issue—have recognized a reporter's privilege in some

26  context and the majority of these states have enacted state shield laws codifying the

27

28

privilege.[1]  As in *Jaffee*, the "the "existence of a consensus among the States indicates that 'reason and experience' support recognition of the privilege."  518 U.S. at 13.  Where such consensus exists, "[d]enial of the federal privilege therefore would frustrate the purposes of the state legislation," which "would have little value" if it "would not be honored in a federal court."  *Id.*  The failure here to recognize an absolute federal privilege in civil cases would undermine and thwart state law privileges and the newsgathering processes they are designed to protect because journalists, like Davis, cannot know whether they will be subpoenaed in state court or federal court, and there is no principled reason why they should be deprived of fundamental protections simply because an action is brought under federal law.

Additionally, in determining whether a reporter's privilege should be recognized under Rule 501, this Court should look to the treatment afforded reporters under California law.  *See, e.g.*, *Tennenbaum v. Deloitte & Touche*, 77 F.3d 337, 340 (9th Cir. 1996) (in determining federal law of privilege, courts "may also look to state privilege law—here, California's—if it is enlightening."); *Lewis v. United States*, 517 F.2d 236, 237 (9th Cir. 1975) ("In determining the federal law of privilege in a federal question case, absent a controlling statute, a federal court may consider state privilege law.").  In recognizing a federal common law reporter's privilege, the Third Circuit looked to Pennsylvania's state reporter's privilege statute for guidance: "The interests behind the Pennsylvania statute and the federal common law in this regard are congruent, each stemming from an independent base of authority but both leading to protection of the vital communication role played by the press in a free society."  *Riley v. City of Chester*, 612 F.2d 708, 715 (3d Cir. 1979).

---

[1]     *See Number of states with shield law climbs to 40*, THE NEWS MEDIA & THE LAW, Reporters Committee for Freedom of the Press, Summer 2011, https://www.rcfp.org/browse-media-law-resources/news-media-law/news-media-law-summer-2011/number-states-shield-law-climbs; Gregg Leslie, *What's up with Wyoming and the reporter's privilege?*, THE NEWS MEDIA & THE LAW, Reporters Committee for Freedom of the Press, Fall 2008, https://www.rcfp.org/browse-media-law-resources/news-media-law/news-media-and-law-fall-2008/whats-wyoming-and-reporters-p.

1  This Court should likewise look to California law for guidance on the application of the

2  privilege because the interests behind the federal common law reporter's privilege and

3  California law are congruent.

4        California's shield law, which is embodied in the state's constitution, provides in

5  relevant part that a journalist "shall not be adjudged in contempt by [a court] . . . for

6  refusing to disclose any unpublished information obtained or prepared in gathering,

7  receiving or processing of information for communication to the public."  Cal. Const. Art.

8  I, § 2(b).  California's shield law applies to any unpublished information, even if it was not

9  gained in confidence.  *See Delaney v. Superior Court*, 50 Cal. 3d 785 (1990).  In a civil

10 action in which information is sought from a non-party journalist, as in this case, the

11 California shield law provides *absolute protection* against compelled disclosure of any

12 unpublished information.  *New York Times Co. v. Superior Court*, 51 Cal. 3d 453, 461

13 (1990) ("We find nothing in the shield law's language or history to suggest the immunity

14 from contempt is qualified such that it can be overcome by a showing of need for

15 unpublished information within the scope of the shield law.").  *See also Mitchell v.*

16 *Superior Court*, 37 Cal. 3d 268, 274 (1984) ("[s]ince contempt is generally the only

17 effective remedy against a non-party witness, the California enactments grant such

18 witnesses virtually absolute protection").

19       In accordance with Rule 501, the Court should recognize a common law privilege

20 commensurate in scope with the California shield law.  The application of this privilege is

21 not only permitted but required under Rule 501, as construed by the Supreme Court.

22 Having recognized the privilege, the Court should apply it to the County's subpoena and to

23 this motion to compel, which would then be absolutely barred, regardless of any dubious

24 showing of need.

25 **III.    DAVIS HAS NOT IMPLIEDLY WAIVED HER PRIVILEGE**

26       The County makes a highly speculative suggestion that Davis has disclosed

27 unpublished information to Plaintiff's counsel.  The grounds for the County's assertion are

28 two paragraphs and one footnote in the complaint (each of which is reproduced three

times, for a total of nine instances).  The cited paragraphs and footnotes deal exclusively with raw numbers of the suicides in jails in San Diego, Los Angeles, and Orange Counties in specific years.

Davis does not know on what articles or information Plaintiff was relying when he made these allegations.  Davis Decl. ¶ 4.  This data is available from a host of sources, including the counties themselves and published news articles.  *See* Davis Decl. Ex. A (discussing suicides in San Diego County jails); Davis Decl. Ex. B (discussing suicides in San Diego and Orange County jails); Davis Decl. Ex. C (discussing suicides in San Diego County jails); Davis Decl. Ex. D (discussing suicides in San Diego and Los Angeles County jails); Davis Decl. Ex. E (discussing suicides in San Diego, Los Angeles, and Orange County jails).  The County has not provided any direct evidence that this information was communicated by Davis to Plaintiff or his counsel, and it clearly could have been obtained from a variety of sources other than Davis.  The burden is on the County to prove a waiver.  Therefore, the County has failed to establish any waiver.

Even if Davis had personally provided to Plaintiff's counsel all of the information in the paragraphs and footnotes in question, however, that would only be evidence that she had waived her privilege as to that information by informally publishing it.  *See Michael v. Estate of Kovarbasich*, No. 15-00275-MWF, 2015 WL 8750643, at *5 (C.D. Cal. Dec. 11, 2015) (holding that releasing some information to parties did not result in a waiver of journalist's undisclosed information).  And, regardless of where Plaintiff's counsel obtained that information, it has now been fully disclosed to the County because it is printed in the complaint.

*Ayala v. Ayers*, the case on which the County relies to support its proposition that a journalist can impliedly waive privilege, was based on the idea that one party shouldn't be allowed to have information that the other party doesn't have.  668 F. Supp. 2d 1248, 1250 (S.D. Cal. 2009) ("In the interests of fairness, a journalist/author should not be permitted to disclose information to advance the interests of one litigant and then invoke the journalist's privilege to prevent discovery of this same information by another litigant.").  The County

1    now has access to all of the information in the complaint, so there is no further information

2    for it to discover.  Moreover, in *Ayala*, there was undisputed evidence of a direct

3    disclosure.  668 F. Supp. 2d at 1249.  As explained above, there is no such evidence in this

4    case.

5    **IV.    THE COUNTY'S ARGUMENT REGARDING TESTIFYING EXPERT**

6    **DISCOVERY IS MERITLESS**

7          The County makes a throw-away argument that it is entitled to compel disclosure

8    from Davis because she is akin to a testifying expert.  Davis is emphatically not a

9    testifying expert.  Unlike expert testimony, the statements made in Davis's articles are

10   hearsay and are not admissible to prove the matters asserted therein.  *AFMS*, 105 F. Supp.

11   3d at 1070.  The proper response to hearsay evidence is to object to it, not to issue a

12   subpoena that will only generate more hearsay.

13   **V.     IT WOULD BE UNDULY BURDENSOME FOR DAVIS TO COMPLY**

14   **WITH THE SUBPOENA**

15         Davis has been reporting on jail deaths for more than five years, and her research

16   regarding this subject is spread across several computers and countless files and

17   notebooks.  She is a freelance journalist and does not have the support of a staff to collect

18   the documents that would be necessary to comply with the County's subpoena.  She

19   estimates that culling the requested documents would take several days and would cause

20   considerable stress.  Davis Decl. ¶ 1.

21         If that weren't burden enough, Davis suffers from stage IV breast cancer.  It is

22   important to her treatment program and recovery that she minimize stress and that she

23   receive sufficient rest.  It is her assessment that collecting and producing the documents

24   requested by the County would raise her stress to an unacceptable level, would impede her

25   ability to receive sufficient rest due to the considerable amount of time and effort involved,

26   and would impair her treatment program and recovery.  Davis Decl. ¶ 2.

27         Furthermore, as a participant in a clinical trial, she has little control over when her

28   frequent medical appointments are scheduled.  Her availability to attend a deposition

1   would be difficult for her to predict, and it would be burdensome for her to do so.  Davis

2   Decl. ¶ 3.  Taken in combination, all of the circumstances mean that complying with the

3   County's subpoena would impose an undue burden on Davis.  Accordingly, the Court

4   should deny the County's motion to compel as unduly burdensome pursuant to Federal

5   Rule of Civil Procedure 45(c).

6   **VI.   DAVIS IS ENTITLED TO COST OF MOTION SANCTIONS**

7          Pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), "If [a] motion [to compel]

8   is denied, the court . . . must, after giving an opportunity to be heard, require the movant,

9   the attorney filing the motion, or both to pay the party or deponent who opposed the

10  motion its reasonable expenses incurred in opposing the motion, including attorney's fees.

11  But the court must not order this payment if the motion was substantially justified or other

12  circumstances make an award of expenses unjust."

13         Davis is entitled to her reasonable expenses, including attorney's fees.  Such fees

14  are routinely awarded to journalists who successfully oppose motions to compel, including

15  when the motions are brought by municipal entities.  *See, e.g.*, *Jimenez v. City of Chicago*,

16  733 F. Supp. 2d at 1274; *Wright*, 206 F.R.D. at 683 ("Even though production has not been

17  compelled, defendants' motion imposed a burden on the *Seattle Times* with very little legal

18  justification.").  Counsel for Davis carefully explained the journalist's privilege to Counsel

19  for the County and even worked to facilitate an agreement between the County and

20  Plaintiff, but the County nevertheless filed a baseless and unnecessary motion to compel.

21  The County's motion was not substantially justified.  In fact, it was and is completely

22  unjustified.  Sanctions are therefore warranted.

23

24

25

26

27

28

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny the County's motion to compel.  If the court has any questions, counsel for Davis would appreciate the opportunity to address them at an oral argument.

Dated:  January 19, 2017

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      /s/ Matthew G. Halgren

James M. Chadwick
Matthew G. Halgren
Attorneys for KELLY LYNN DAVIS

SMRH:485227108.2