THOMAS E. MONTGOMERY, County Counsel
County of San Diego
By RICKY R. SANCHEZ, Senior Deputy (SBN 107559)
   MELISSA M. HOLMES, Senior Deputy (SBN 220961)
   FERNANDO KISH, Senior Deputy (SBN 236961)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531- 4874
E-mail: ricky.sanchez@sdcounty.ca.gov

Attorneys for Defendant County of San Diego

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASSIDY NeSMITH, individually and as Guardian ad Litem on behalf of SKYLER KRISTOPHER SCOTT NeSMITH, and as Successor in Interest to THE ESTATE OF KRISTOPHER SCOTT NeSMITH,<br><br>    Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, SAN DIEGO COUNTY SHERIFF'S DEPARTMENT; WILLIAM D. GORE, SAN DIEGO COUNTY SHERIFF; VISTA DETENTION FACILITY; and DOES 1 – 100 inclusive,<br><br>    Defendants. | No. 15-cv-0629-JLS (AGS)<br><br>REPLY TO OPPOSITION TO MOTION TO COMPEL THIRD-PARTY WITNESS KELLY DAVIS TO APPEAR FOR DEPOSITION AND PRODUCE DOCUMENTS IN COMPLIANCE WITH SUBPOENA<br><br>Date: February 2, 2018<br>Time: 4:00 p.m.<br>Courtroom: Suite 5160<br>Hon. Andrew G. Schopler, U.S. Magistrate Judge<br><br>NO ORAL ARGUMENT UNLESS REQUESTED BY COURT |

**I.**

**IF PLAINTIFFS ARE GOING TO BE ABLE TO RELY ON DAVIS' OPINIONS AND CONCLUSIONS AS EVIDENCE THAT THE COUNTY WAS ON NOTICE OF A PATTERN OF SIMILAR CONSTITUTIONAL VIOLATIONS, THE COUNTY REQUIRES AN OPPORTUNITY TO DEPOSE DAVIS ABOUT THE BASIS OF HER OPINIONS AND CONCLUSIONS**

Plaintiffs rely on Davis' "research", opinions, and conclusions to support their theory that the County was on notice that there was a pattern of constitutional violations prior to Kristopher NeSmith taking his own life. [See e.g. Doc. No. 19 and at 24:16 – 26;

25:9 7-27; 26:1-28; 27:1-2; 9-28; 28:1-4; 30:18-25; 31: 2-24; 32: 3-8; 12-27; 33: 9-13;36: 22-28; 37: 1-28; 38:1-22; 39:1-23 & Doc. 19-1 at pp. 10, 18, 20, 23, & 27.][1] Plaintiffs' Second Amended incorporates charts from Davis' articles in three separate sections. [Doc. No. 19 at 25:16 – 25; 30:19 – 28; 37:7 – 16.] If Plaintiffs are going to be able to rely on Davis' opinions, conclusions, charts, and analysis at to oppose the County's motion for summary judgment or at trial, the County requires an opportunity to examine Davis regarding her analysis, motivations, and basis for conclusions that is not set forth in her published articles. Per Davis' own declaration, information sought by the subpoena is contained in computers, files and notebooks in her possession (as opposed to set forth in her articles). [Doc 62 -1 at 2:2 – 4]. Otherwise, the County will be left defending Davis' opinions and conclusions without a reasonable opportunity to conduct discovery to challenge those opinions and conclusions.

## II.
### IN ACCORDANCE WITH THE *SHOEN* DECISIONS THE INFORMATION DAVIS'S TESTIMONY IS HIGHLY RELEVANT TO THE COUNTY DEFENDING AGAINST PLAINTIFF'S CLAIM OF *CANTON* LIABILITY

Davis contends that the basis for her articles are not relevant under *Shoen II* and are only relevant to show that her conclusions and opinions were in the public realm. In order to present a successful claim municipal civil rights liability under *Canton*, the Supreme Court in *City of Canton v. Ohio,* 489 U.S 378 (1989) and *Connick v. Thompson*, 563 U.S. 51 (2011), repeatedly stated that a pattern of actual constitutional violations is required to state a deficient program based federal civil right claim. *Canton* further articulated that "a pattern of constitutional violations could put the municipality on notice that its officers confront the particular situation on a regular basis, and that they often react in a manner contrary to constitutional requirements. *Canton*, 489 U.S. at 397. For example, if police "so often violate constitutional rights" the entity may be on notice of a need for further training. *Id.* at 390 n. 10. In denying the County's motion to

---

[1] All page citations reference the Court's ECF page numbers listed on the top of the page.

dismiss Plaintiff's municipal civil rights claims, the Court determined that Davis' articles potentially could have provided notice to support such a claim. [Doc. 25 at 12:3 – 17.] In order to successfully impeach the information presented in the articles and the potential notice, the County would need to challenge both the content of the articles themselves as well as the information Davis used in constructing her hypotheses.

### A. To The Extent The Court Allows Davis' Articles To Be Evidence Of Notice, Davis' Research, Conclusions And Analysis Are Relevant Because They Are Central To Plaintiffs' Contention On Notice Of An Unconstitutional Custom Or Practice.

Plaintiffs' second amended complaint sets forth:

> "Kelly Davis is a local reporter who has dedicated her career to reporting and investigating deaths in San Diego County jails. She began her series of investigations into San Diego jail suicides in 2007. Since this time she has published over a dozen articles highlighting the outrageous pattern of deaths and suicides in San Diego County jails. Not only do the underlying deaths and circumstances put the County and its policymakers on actual and constructive notice of a pattern of constitutional violations, but Kelly Davis' countless CityBeat publications – in which the County spokeswomen comments in every article –also puts the county on notice of a pattern of constitutional violations."

[Doc. No. 19 at 22:25 – 23:6.]

Similarly, the Report and Recommendation denying the County's motion to dismiss Plaintiff's Second Amended Complaint, also noted that Davis' articles and research could be used as evidence that the County was on notice of alleged constitutional violations. The report and recommendation states:

> "To be deliberately indifferent, a party must first know of the thing they choose to be indifferent about. *See Connick*, 563 U.S. at 61. To attribute deliberate indifference to a government entity, a plaintiff must show that 'policymakers are on actual or constructive notice that a particular omission in their training program causes [the government entity's] employees to violate citizens' constitutional rights.'"
>
> "'The pertinent question with respect to Defendant's Motion to Dismiss is whether the County had notice of a pattern of constitutional violations…'"

> "[T]he facts reiterated in the SAC along with news reports and anecdotal details of previous inmate suicides give context to the troubling statistics cited by Plaintiffs. Taken as a whole, the SAC provides sufficient detail of circumstances predating Kris's suicide that, if proven, could plausibly have given the County notice that, absent corrective action, it would continue to inadvertently violate inmates' Eighth or Fourteenth Amendment rights by failing to provide adequate mental health care."

> "The news reports and anecdotes detailed above along with the alleged facts surrounding Kris's own suicide, evidence the absence of an appropriate institutional level response to suicidal ideations by inmates entrusted to the County's care."

[Doc. No.25 at 9:20-24; 10:10-12; 12:13-18; 13:3-5.]

The order denying defendant's motion for reconsideration also referenced Davis' articles. [Doc. No. 36 at 5:19-20 ("Plaintiffs have pled specific suicides, statistics, and news articles that raise their right to relief above the speculative level.")] In light of the Court's ruling, the information in Davis' articles' is highly relevant to the underlying lawsuit.

Davis argues that any information that the County could obtain through deposition is irrelevant to dispute whether or not the County was on notice at the time of Kristopher Nesmith's suicide. Davis contends that "obtaining more information after the fact cannot possibly illuminate what the County knew at the time of the suicide." [Doc. No. 62 at 14:10-11.] This argument fundamentally confuses the necessity to depose Davis. Her deposition will not provide evidence of what the *County* knew or did not know at the time the articles were written but rather to rebut her conclusions and opinions that allegedly put the County on notice of a pattern of constitutional violations. It is necessary to inquire as to what *Davis* knew or did not know at the time the articles were written and what she relied on, or chose not to rely on, when forming her conclusions and opinions.[2]

///

---

[2] The County does not seek to depose Davis regarding her conclusions and articles published after Kristopher NeSmith took his own life. Thus, Davis' reference to articles published after Kristopher NeSmith's suicide on March 1, 2013 and attached to Davis' declaration are not relevant.

1  The County has no way to access or recreate what journalistic decisions were employed
2  when constructing this series of articles.

### B. Plaintiffs' Proposed Amendment To The Stipulation Permitted The Use Davis' Conclusions For The Non-Hearsay Purpose Of Proving Notice While Simultaneously Preventing The County From An Opportunity To Conduct Discovery To Refute Her Conclusion Is Not Viable.

Plaintiffs' proposed amendment to the stipulation defeated the purpose of entering into a stipulation in in the first place. [Doc. No. 57-2 at 43:24 – 44:3.] If Davis' opinions set forth in the articles are able to come in as evidence that information was in the "public realm," Plaintiffs will also necessarily be able to include information regarding Davis' conclusions that were in the "public realm" that allegedly put the County on notice. Plaintiffs' proposed amendment to the stipulation would have simultaneously prevented the County from obtaining evidence necessary to impeach her opinions.

Davis argues that Plaintiffs' proposed amendment to the stipulation is akin to allowing judicial notice that the articles existed. However, the force of permitting evidence of Davis' opinions and conclusions regarding the County's allegedly high suicide rate goes beyond the existence of the articles and rises to notice for the purpose of supporting municipal civil rights liability.

The County agrees that Davis' articles, opinions and conclusions should be excluded as hearsay. However, in light of the Court's order on the motion to dismiss discovery is necessary. If Plaintiff's are permitted to use of the articles (including Davis' opinions and conclusions) as notice of pattern of constitutional violations, it could remove the articles and Davis' conclusions contained therein from the realm of hearsay evidence and thus could allow Plaintiffs to present the articles for their de facto substance. *Saul Zaentz Co. v. Wozniak Travel, Inc.*, 627 F. Supp. 2d 1096, 1113 (N.D. Cal. 2008)( explaining , "when a search report is offered to prove the effect of the report on the listener, i.e. to show notice to the recipient, this does not fall within the definition

1  of hearsay and is admissible evidence."); *see also Entous v. Viacom Int'l Inc.*, 151
2  F.Supp.2d 1150, 1157 n. 5 (C.D.Cal.2001).  Arguably, the bare fact that articles existed
3  in the public realm which discussed jail mortality would not adequately prove the County
4  was on notice. (Instead, Plaintiffs would need to show notice by potentially introducing
5  the conclusion and opinions contained within the articles (i.e. the County had a high
6  suicide rate).

## III.

## THE OTHER TWO *SHOEN* FACTORS ALSO WEIGH IN FAVOR OF GRANTING THE COUNTY'S MOTION TO COMPEL

10  As addressed in the County's moving papers, the other two *Shoen* factors weigh in
11  favor of permitting a deposition of Davis to determine the basis for her opinion and
12  conclusions, as well as review of the materials she has in her possession that form the
13  basis of her analysis.

### A. The Discovery Sought By The County Is Not Available From Other Sources.

16  Davis correctly asserts that the County does not need raw data.  [Doc. No. 57 at
17  7:5-6.]  However, the instant motion is not based on the need for raw data; instead it is
18  focuses on Davis' "interpretations and analysis of that data."  Some of this analysis is
19  contained in the articles themselves, but the entire compendiums of her interpretations are
20  only available from Davis.  Further, Davis' motivations, biases, and influences are also
21  relevant to whether the articles provided adequate notice.
22  The use of articles published in a local "alternative free press" newspaper to show
23  notice of constitutional violations is a unique situation in that Davis' articles are not peer
24  reviewed published scholarship.  Ironically, if Davis' articles were peer reviewed
25  publications, the County in all likelihood would have been able to depose her. *See*
26  *Kaufman v. Edelstein*, 539 F.2d 811, 820 (2d Cir. 1976) (Explaining Federal Rule 501 of
27  Evidence, does not "recognize any general privilege for experts."). As a result, the
28  County is now in a difficult position of being unable to fully depose a source that has no

academic guarantee of trustworthiness, but is alleged to have put the County on notice of constitutional violations. Accordingly, the County needs to-in effect-take on the role of a "peer reviewer" and be able to critique the basis and analysis underlying the articles. Furthermore, this information is only available directly from Ms. Davis.

### B. The Information Is Not Cumulative.

Davis argues that the discovery the County seeks to propound is cumulative because the data is available from other sources or can be procured using an alternative method. She argues that "in the reporters privilege context, information is also cumulative if a party already has information that would accomplish the same purpose or if it could obtain information that would accomplish the same purpose from an unexhausted source." [Doc. No. 62 at 10:4-7] citing to *Jimenez v. City of Chicago*, 733 F. Supp. 2d 1268, 1273 (W.D. Wash. 2010). (explaining " [t]he information [defendants] seek from [ the journalist] is cumulative unless they can demonstrate that alternative means of procurement will provide insufficient results."). Here, because the County is specifically asking for Davis' personal analysis and impressions, Davis is the only person that can provide this information. Further, *Jimenez* is distinguishable because in that case "the requested documents are all letters and notes to and from Plaintiff." 733 F. Supp. 2d at 1273. Because the County does not currently have access for any of Davis' underlying analysis and impressions and is unable to obtain Davis' personal analysis and impressions from other sources, the information sought is not cumulative.

### IV.
### THE COUNTY IS WILLING TO ACCOMMODATE DAVIS' ILLNESS TO THE FULL EXTENT POSSIBLE

As set forth in its moving papers, the County will accommodate Davis's concerns to the fullest extent possible, including flexibility regarding scheduling in light of her treatment schedule and is willing to break up the deposition over several sessions if necessary.

///

///

## V.

## SANCTIONS ARE NOT WARRANTED

Before filing the instant motion, the County made numerous attempts to meet and confer with Davis' counsel via phone, written correspondence, and a lengthy in-person meeting at Davis' counsel's offices. At the suggestion of Davis' counsel, the County drafted a stipulation to that Davis' counsel offered to present to Plaintiffs. The County's' actions reflect its good faith effort to resolve the discovery dispute without Court intervention.

In the event the Court were to deny the motion, sanctions against the County are not warranted the motion is: "substantially justified" or other circumstances make the award unjust, the court is not required to award sanctions in the form of attorney fees. Fed. R. Civ. P. 37(a)(5)(B).

Here, after diligently working with counsel for Davis to come to a mutual agreement, the County was substantially justified in filing the instant motion. Plaintiff cites to the *Jimenez v. City of Chicago,* 733 F. Supp. 2d 1268, 1274 (W.D. Wash. 2010) and *Wright v. Fred Hutchinson Cancer Research Ctr.*, 206 F.R.D. 679, 682 (W.D. Wash. 2002). Davis has not established sanctions are warranted. In *Jimenez*, the "defendant subpoenaed Nielsen before attempting any kind of discovery beyond written interrogatories with Plaintiff." 733 F. Supp. 2d at 1274. *Wright* involved a class action where defense counsel attempted to depose, a journalist prior to deposing the Plaintiff. 206 F.R.D. 679 at 682. These two cases are entirely distinguishable from the instant case facts where a journalist's research is being used to bolster one of Plaintiffs' central arguments.

///
///
///
///
///

**CONCLUSION**

Accordingly, for the reasons set forth above, the County respectfully requests the court grant the Motion to Compel Deposition and Production of Documents.

DATED: January 26, 2018            THOMAS E. MONTGOMERY, County Counsel

By: s/MELISSA M. HOLMES
Attorneys for Defendant County of San Diego
E-mail: melissa.holmes@sdcounty.ca.gov