THOMAS E. MONTGOMERY, County Counsel
County of San Diego
By RICKY R. SANCHEZ, Senior Deputy (SBN 107559)
   MELISSA M. HOLMES, Senior Deputy (SBN 220961)
   FERNANDO KISH, Senior Deputy (SBN 236961)
   ROBERT A. ORTIZ, Senior Deputy (SBN 246849)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531- 4860

Attorneys for Defendant County of San Diego

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHASSIDY NeSMITH, individually and as Guardian ad Litem on behalf of SKYLER KRISTOPHER SCOTT NeSMITH, and as Successor in Interest to THE ESTATE OF KRISTOPHER SCOTT NeSMITH,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO, SAN DIEGO COUNTY SHERIFF'S DEPARTMENT; WILLIAM D. GORE, SAN DIEGO COUNTY SHERIFF; VISTA DETENTION FACILITY; and DOES 1 – 100 inclusive,<br><br>Defendants. | No. 15cv00629-JLS (AGS)<br><br>DECLARATION OF DEPUTY CHRISTOPHER OLSEN IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

I, Christopher Olsen, declare:

1. I have personal knowledge of the matters set forth herein and could competently testify thereto if called upon.

2. I am employed by the County of San Diego as a deputy sheriff in the San Diego County Sheriff's Department.

3. I worked the night shift at the Vista Detention Facility beginning at 6 p.m. on February 28, 2014 and concluding at 6:30 a.m. the following day (March 1, 2014). I was assigned as a housing rover deputy in the Upper West House.

4. As part of my duties as a housing rover, I performed the hourly security checks in Upper West module 1 where I have been informed Kristopher NeSmith was housed. I do not have an independent recollection of Mr. NeSmith.

5. Per the training, policies, and procedures at the jail at the time, as well as per my own practices, I would remove any lines or ropes affixed to lighting fixtures inside inmate cells because it was a security and safety concern. It was my practice to have the inmate take the lines or rope down and then I would confiscate it. If the inmate refused, I would take it down myself and confiscate it.

6. We received training at the academy and regularly received training thereafter on suicide prevention. I received training, and it was my practice at the time, to take any inmate that was at risk of being suicidal to medical to be evaluated unless it was unsafe to do so because the inmate was violent or it was so clear that the inmate was suicidal that medical did not need to opine as to the need for immediate placement in the safety cell (then I would the inmate them directly to a safety cell.) I was trained to identify inmates who might be suicidal.

7. It is my understanding that an inmate is claiming that a deputy saw a rope affixed to Mr. NeSmith's light, that the deputy told Mr. NeSmith to take it down, the deputy asked if Mr. NeSmith was going to kill himself with the rope, and then the deputy walked away without addressing the security concern. As the Upper West rover, I would have conducted security checks in module 1 during my shift before Mr. NeSmith committed suicide. I know that I did not observe a rope attached to Mr. NeSmith's light fixture because I would have had him take it down, or I would have taken it down, and I would have confiscated it. Also, I would never have made a statement about an inmate potentially committing suicide without elevating the concern to a medical professional pursuant to the facility procedures as well as my training and practices.

8. During my shift that day, no one reported that Mr. NeSmith was not eating. If someone had reported it, per my training and practice, I would have followed up on the report.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed in San Diego, California, this 14th day of February, 2018.

_____

CHRISTOPHER OLSEN